IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LOUIS REYES-REYES, ET AL

    Plaintiffs,

v.

PEDRO TOLEDO-DAVILA, ET AL

    Defendants.

Civil No. 10-1565 (SEC)

**OPINION AND ORDER**

Before the Court are co-defendants' motion for summary judgment (Docket # 54), plaintiffs' opposition thereto (Docket # 67), co-defendants' reply (Docket # 77), and plaintiffs' sur-reply (Docket # 82). After reviewing the filings and the applicable law, co-defendants' motion is **GRANTED**.

**Factual and Procedural Background**

This federal question suit stems from the alleged unlawful obtainment of a search warrant directed at plaintiffs' residence and vehicle. Specifically, plaintiffs Louis Reyes-Reyes, and his son, Louis Reyes-Hernandez (collectively, Plaintiffs), bring this action under 42 U.S.C. § 1983, alleging violations of the Fourth Amendment right to be free from unreasonable searches. They also set forth claims under articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit 31, §§ 5141-5142, as well as conspiracy claims under 42 U.S.C. §§ 1985-1986. The co-defendants are Agent Felix Benitez-Quiñones ("Benitez"), the state police officer who allegedly fabricated the "facts" asserted in support of the search warrant, and Pedro Toledo Davila ("Toledo"), the former chief of the Puerto Rico Police Department (the "PRDP").[1]

---

[1] On December 10, 2010, this court dismissed with prejudice Plaintiffs' claims against the other named co-defendants, to wit: the PRDP, the Commonwealth of Puerto Rico, and the Puerto Rico Secretary of Justice. Reyes-Reyes v. Toledo-Davila, 754 F.Supp.2d 367, 371 (D.P.R. 2010).

**Civil No. 10-1565 (SEC)** **Page 2**

The uncontested, material facts are as follows.[2] At the time of the events giving rise to this litigation, Benitez worked for the PRPD as an agent assigned to the Illegal Weapons Division, carrying out confidential investigations regarding illicit trafficking. Docket # 71-1, p. 1. On September 19, 2007, an informer phoned Benitez with an anonymous confidence. SUF ¶ 1. This tipster informed Benitez that, at Jardines de Rio Grande (a development in Rio Grande, Puerto Rico), a "dark-skinned" male living in a "red-colored house with french windows" (the "House") trafficked in controlled substances and illegal firearms. Id., ¶¶ 1-2. According to the anonymous informant, this individual drove a black Toyota Tacoma with license plate # 821-144 (the "Tacoma"). Id., ¶ 3.

Armed with such information, Benitez immediately discussed it with his supervisor, who instructed Benitez to further investigate the matter. Id., ¶ 4. Accordingly, that same day at around 2:30pm, Benitez drove to the area in question and parked his unmarked car inconspicuously near the House, but having witnessed no illicit activity, left after several minutes of surveillance. Id., ¶ 5. The next day, at around 4:20pm, Benitez returned to the scene, parking his undercover car nearby the House. Id., ¶ 6. This time, however, he saw a "brown-

---

[2] The co-defendants complied with Rule 56 and submitted a statement of uncontested facts ("SUF"), numbered, and supported by record citations. In opposition, Plaintiffs submitted their opposing statement of facts ("OSF"). Dockets # 68. They also filed a statement of additional facts ("ASUF"). Docket # 68. Upon reviewing the record, however, Plaintiffs' OSF contained no "[s]eparate, short, and concise statement of material facts." D.P.R. Civ. R. 56(c). Instead, they only included reference citations without their being preceded by an assertion of fact. OSF ¶¶ 1-21. To cinch matters, every single paragraph denied by Plaintiffs contains a boiler plate record citation that reads "Exhibit I and II of the Opposition [to] Motion for Summary Judgment Answer #20. Exhibit III pages marked 56-64." OSF ¶¶ 1-21. As to the Exhibit III (Reyes-Reyes' deposition), Plaintiffs provided no lines supporting each denial. And last but not least, Plaintiffs' proposed statements of fact # 1-2, 5, 6, 7, 8, 9 & 11-17 are immaterial to the qualified immunity analysis at issue here, because Benitez never claimed to have seen any of the Plaintiffs (nor did he say that he investigated them). Docket # 71-1. Moreover, Benitez neither alleged to have seen the vehicle in question on September 20, 2007, id., nor stated to have witnessed any of the individuals mentioned by Plaintiffs (ASUF ¶¶13-17).

**Civil No. 10-1565 (SEC)**                                                                                          **Page 3**

skinned male" (the "Individual") exiting the House. But because he saw no further suspicious or illegal activity, he departed. Id., ¶ 7.

According to Benitez's warrant affidavit, on September 21, 2007 at around 9:30pm, he returned to the area in question, when he observed the Tacoma arrive and park in front of the House. Id., ¶ 8.[3] Benitez then witnessed the Tacoma driver as he exited the vehicle and headed inside the House. Id., ¶ 9. Then, the Individual left the House, walked towards the Tacoma, opened the driver's side door, and bent over looking under the seat. Id. He next observed the Individual "take a black pistol out of the [Tacoma] and rapidly put in his right pocket . . . ." Id. After various minutes, Benitez abandoned the scene. Id.

At around 9:30pm on September 23, 2007, Benitez returned to the location. Id., ¶ 10. He again spotted the Individual as he left the House. Shortly thereafter, a white Toyota Corolla arrived and parked in front of the House. Id., ¶ 11. According to Benitez's testimony, the Corolla driver and the Individual shook hands and proceeded to walk inside the House. Id., ¶ 12.[4] After several minutes, Benitez observed as both men exited the House, seeing the Corolla driver holding a "clear plastic bag in his right had, which had smaller plastics bags inside with a white powder." Id., ¶ 13.

Benitez resumed surveillance on September 25, 2007 at around 6:30pm. Id., ¶ 15. After some time, he observed the white Corolla from his previous stakeout (being driven by the same

---

[3] However, according to Reyes-Reyes' own accommodating testimony, at that time he "was socializing with fellow friends at a nearby pub," and the Tacoma was with him "at all moments." ASUF ¶¶ 3-4. But, as fully discussed later, this self-serving and uncorroborated statement is an insufficient offer of proof to defeat the presumption of validity to which the warrant affidavit is entitled. Hence, the Court disregards such statement.

[4] Reyes-Reyes conveniently contends that he and his friend were watching an "Ultimate Fighting Championship event" that night and received no other visitors during the hours Benitez surveilled the House (ASUF ¶¶ 7 & 10). Again, as elucidated below, this uncorroborated statement, without more, falls short of creating a bone fide factual dispute in light of the governing law (see note 3, above).

**Civil No. 10-1565 (SEC)** **Page 4**

driver from two nights previously) park in front of the House. Id., ¶ 16. According to Benitez, he then witnessed the Individual leave the House, go back inside briefly, and exit "with a black handbag." Id., ¶ 17. The Individual then gave the black handbag to the driver, who "pull[ed] out from the handbag a nickel-colored revolver, look[ed] at it, and put[] it back inside the bag." Id., ¶¶ 17-18.

After both men left the scene, Benitez reported back to his supervisor regarding what he had seen; the latter in turn instructed Benitez to refer the case to the district attorney's office. Id., ¶ 20; Docket # 71-1, p. 2. Upon Benitez's referral, on September 26, 2007, the Puerto Rico Department of Justice authorized Benitez to request a search warrant for firearms and controlled substances. Docket # 71-2, p. 1; SUF ¶ 20. That same day, a state court judge, after finding probable cause, issued two search warrants: the first authorized a search of the House, while the second gave way for a search of the Tacoma. Id., ¶¶ 21-22. On October 4, 2007, the PRDP executed the search warrants, which yielded a negative result; that is, neither controlled substances nor illegal firearms were found Id., ¶ 23.

The owner of the House turned out to be Reyes-Reyes. Needless to say, neither Reyes-Reyes nor his son were arrested as a result of the search, and no criminal charges were brought against them. Id., ¶ 24. Neither Reyes-Reyes nor Benitez knew each other nor did they have a quarrel. Id., ¶¶ 26-27. And, moreover, Benitez had no brawl with any other agent from the Illegal Weapons Division of the PRDP.

As a result of this mixup, Plaintiffs filed suit on June 21, 2010, alleging that Benitez committed "perjury" in order to obtain the search warrants (Docket # 1). They further contend that Benitez "maliciously and wilfully" violated their constitutional rights to be free from illegal and unreasonable searches and seizures. Averring deprivation of sleep, loss of reputation, humiliation, mental anguishes, emotional distress, and "mental illnesses," they claim damages in excess of five million dollars. Id.

**Civil No. 10-1565 (SEC)**                                                                 Page 5

After discovery and other procedural nuances, Benitez and Toledo moved for summary judgment, requesting dismissal of Plaintiffs' complaint (Docket # 52). In support of their contentions, they argue that (1) Plaintiffs have failed to state a supervisory liability claim against Toledo; (2) Plaintiffs have marshaled no evidence to support their conspiracy claims; and (3) Benitez is entitled to qualified immunity. Id.

Devoting their entire motion to arguing that genuine issues of material fact preclude Benitez's qualified immunity, Plaintiffs oppose. But they mount no defense whatsoever (not even an argument in passing) to co-defendants' contentions regarding the claim against Toledo and the conspiracy allegations. In fact, their motion in opposition is devoid of any discussion and supporting authorities, see D.P.R. Civ. R. 7(a), on this front. Pursuant to this circuit's well-established "'raise-or-waive' rule," Rocafort v. IBM Corp., 334 F.3d 115, 121 (1st Cir. 2003), which "[a]pplies with equal force to situations where a plaintiff properly raises an issue in his complaint, but then fails to adequately address it as part of his summary judgment argument[,]" id. (citing Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995)), Plaintiffs' failure to proffer a defense is tantamount to waiver.[5] Thus, co-defendants' motion for summary judgment is **GRANTED** as to these unopposed causes of action. Plaintiffs' claim against Toledo and their conspiracy claim are therefore **DISMISSED with prejudice**. The ensuing discussion, then, is limited to Plaintiffs' § 1983 claim against Benitez.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

---

[5] Plaintiffs insist that discovery should be reopened (Docket # 67, p. 7). But the Court already denied this unfounded request (Docket # 58). At any rate, Plaintiffs failed to "[s]how[] by affidavit or declaration . . . [why] it cannot present facts essential to justify its opposition." Fed. R. Civ. P 56(d)

**Civil No. 10-1565 (SEC)**                                                                 **Page 6**

as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court construes the record in the "light most flattering" to the nonmovant, resolving all reasonable inferences in that party's favor. Soto-Padro v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make a choice between the parties' differing versions of the truth at trial." DePoutot v. Raffaelly, 424 F.3d 112, 116 (1st Cir.2005) (quoting Garside, 895 F.2d at 48 (1st Cir.1990)); SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008). A fact is material, meanwhile, if it "[a]ffect[s] the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir.2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990)). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir.1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbott Labs., Inc., 424 F.3d 35, 37 (1st Cir.2005) (citations and internal quotation marks omitted).

**Civil No. 10-1565 (SEC)**                                                               **Page 7**

The foregoing means that the non-movant must "[p]roduce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co. of Am., 101 F.3d 218, 223 (1st Cir. 1996) (citations and internal quotation marks omitted); see also e.g., Kelly v. United States, 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence"). As particularly relevant here, "[w]hen a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff bears the burden of showing infringement of a federal right." Lopera v. Town of Coventry, 640 F.3d 388, 395-96 (1st Cir. 2011) (citing Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir.1992)).

Further, when filing for summary judgment, both parties must comply with the requirements of Local Rule 56 and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. D.P.R. Civ. R. 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation . . . .

D.P.R. Civ. R. 56(c) (emphasis added). The local rules further provide that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." D.P.R. Civ. R. 56(e). And that a "court may disregard any statement of material fact not supported by a specific record citation to record material properly considered on summary judgment." Id. When "a party

**Civil No. 10-1565 (SEC)**                                                                                     **Page 8**

opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Caban Hernandez v. Phillip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007) (citing Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004)). These rules, furthermore, "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." Id. at 8. The First Circuit has repeatedly held that when the parties ignore the so-called anti-ferret rule, they do so at their own peril. E.g., Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000).

**Applicable Law and Analysis**

*Qualified Immunity*

As an initial manner, although Benitez argues that he did not violate § 1983, he neglects to develop this contention and instead proceeds to discuss the qualified immunity doctrine. Docket # 54, p. 10. Passing no judgment as to the wisdom of this course of action, the Court follows suit. As said, Benitez posits that he is entitled to qualified immunity because "[h]e acted according to the law in the performance of his discretionary duties." Id. Disagreeing, plaintiffs maintain that the qualified immunity "test does not apply to this case" because Benitez's declarations were "false", and therefore he "[k]new that what he was doing was unconstitutional." Docket # 67, p. 7. For the reasons laid out below, Plaintiffs' undeveloped argument is without merit.

Qualified immunity, "an immunity from suit rather than a mere defense to liability[,]" Hunter v. Bryant, 502 U.S. 224, 227 (1991) (*per curiam*) (citation and internal quotation marks omitted)), purports to "[a]ccommodate the public interest in deterring unlawful conduct with the need to provide a forum for individuals to pursue redress for constitutional wrongs suffered in the hands of public officials." Martinez-Rodriguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010) (citing Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982)). As repeatedly announced, this

**Civil No. 10-1565 (SEC)** **Page 9**

doctrine protects "all but the plainly incompetent or those who knowingly violate the law[,]" Malley v. Briggs, 475 U.S. 335, 341 (1986), providing "[p]ublic officials an immunity from suit and not a mere defense to liability." Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). When this doctrine is asserted, a court "[m]ay apply it on summary judgment so long as any disputed facts are assumed arguendo in favor of the non-moving party." Solis-Alarcón v. United States, 662 F.3d 577, 581 (1st Cir. 2011) (citing Lopera 640 F.3d at 395-96).

Here, Benitez is entitled to qualified immunity unless (1) "the facts alleged or shown by the plaintiff make out a violation of a constitutional right" and (2) such right was "'clearly established' at the time of the defendant's alleged violation." Maldonado, 568 F.3d at 269 (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). "A right is clearly established only if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (1st Cir. 2011) (quoting Brosseau v. Haugen, 543 U.S. 194, 199 (2004)). In turn, the second step of the qualified immunity has two angles: the first aspect examines "[t]he clarity of the law at the time of the alleged civil rights violation." Id. at 269. To defeat qualified immunity, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987) (alterations in original)).

The second aspect centers "[m]ore concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." Id. "It is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. (citations and internal quotation marks omitted). Put differently, the relevant, dispositive inquiry in determining whether a right is clearly established is whether "[i]t would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (citations and internal quotation marks omitted). The salient inquiry, then, boils down to whether the law at the time

**Civil No. 10-1565 (SEC)**                                                                 **Page  10**

of the alleged violation provided the defendant "[f]air warning that his particular conduct was unconstitutional." Id. (citing Hope v. Pelzer, 536 U.S. 730, 741 (2002)).

Although courts usually address the requisites of a qualified immunity defense sequentially, that is, determining first whether a constitutional violation has been asserted, they "[h]ave discretion to decide whether, on the facts of a particular case, it is worthwhile to address first whether the facts alleged make out a violation of a constitutional right." Id. at 270. When a Fourth Amendment inquiry involves a reasonableness question heavily dependent on the facts, as in this case, courts may avoid definitive determinations of the substantive constitutional claims and turn directly to the second prong of the qualified immunity test. This approach is especially prudent when it is clear that the public official is entitled to immunity based on the second step. See Buchanan v. Maine, 469 F.3d 158, 168 (1st Cir. 2006).

Finding this approach better-suited on the facts of this case, the Court's analysis of Plaintiffs' claims will proceed directly to the second prong, namely whether a reasonable defendant would have understood that his conduct violated Plaintiffs' constitutional rights. After all, a § 1983 action (such as this one) frequently turns on the second prong of the qualified immunity inquiry, "which channels the analysis from abstract principles to the specific facts of a given case." Gutierrez v. Toledo, 780 F.Supp.2d 171, 177 (D.P.R. 2011) (citations and internal quotation marks omitted).

Plaintiffs claims, as related, are predicated on the Fourth Amendment, which provides in relevant part that"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." In the seminal case of Franks v. Delaware, the Supreme Court held that the use of bogus statements to secure a warrant, where the false statements are necessary to the finding of probable cause, contravenes the Fourth Amendment's warrant requirement. 438 U.S. 154, 164 (1978). As the Court

**Civil No. 10-1565 (SEC)**                                                                 **Page 11**

underscored, the Warrant Clause of the Fourth Amendment contemplates the affiant's sincerity: "[N]o warrants shall issue, but upon probable cause, supported by oath or affirmation . . . ." Id.[6]

In discussing the requirements of a § 1983 claim for an illegal search pursuant to a warrant issued upon false officer testimony, the First Circuit has consistently followed the so-called Franks rule, e.g., United States v. Valerio, 48 F.3d 58, 62 (1st Cir. 1995); Krohn v. United States, 742 F.2d 24, 26 (1st Cir. 1984), summarizing it as follows: a plaintiff must establish that (1) the officer made "a false statement knowingly and intentionally, or with reckless disregard for the truth" that was included in the warrant affidavit, and (2) "the false statement is necessary for a finding of probable cause." Aponte-Matos v. Toledo-Dávila, 135 F.3d 182, 187 (1st Cir. 1998) (citations and internal quotation marks omitted). Reckless disregard of the truth in the submission of a warrant application in turn may be established if the affiant "in fact entertained serious doubts as to the truth of the allegations" or where "circumstances evidence[d] obvious reasons to doubt the veracity of the allegations" in the application. United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002) (citations and internal quotation marks omitted).

But because warrant affidavits benefit from a presumption correctness, "[t]he challenger's attack must be more than conclusory . . . ." Franks, 438 U.S. at 171. Therefore, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." Id. Or, there must be a showing pointing to "technically accurate statements" that "have been rendered misleading by material omissions." United States v. Scalia, 993 F.2d 984, 987 (1st Cir. 1993).

---

[6] It should go without saying that 42 U.S.C. § 1983 is the statutory predicate for the vindication of federal rights elsewhere conferred. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

**Civil No. 10-1565 (SEC)**                                                                                          **Page  12**

The First Circuit, furthermore, has long held that the Franks standard for suppression of evidence informs the scope of qualified immunity in a civil damages suit against officers who allegedly procure a warrant based on an untruthful application. E.g., Burke v. Town Of Walpole, 405 F.3d 66, 82 (1st Cir. 2005). This is because "'[r]easonable police investigators must be secure in the knowledge that they can present evidence of a crime to the proper charging officials without worry of suit, so long as they do not fabricate evidence or submit evidence with certain knowledge of its falsity.'" Martinez-Rodriguez v. Guevara, 597 F.3d 414, 421-422 (1st Cir. 2010) (quoting Williams v. City of Albany, 936 F.2d 1256, 1260 (11th Cir. 1991)).

Viewing the evidence in the light most favorable to Plaintiffs, and based on the facts they have produced, it cannot be said, as plaintiffs incorrectly contend, that qualified immunity is "inapplicable" to Benitez. Given that two search warrants were issued in this case (one directed at the House; the other aimed at the Tacoma), the Court bifurcates the discussion accordingly.

To begin with, the propriety of Benitez's qualified immunity defense with respect to the warrant authorizing the search of the House is self-evident. As previously explained, Benitez's surveillance and ensuing affidavit had their inception with an anonymous call. Following orders from his supervisor, Benitez conducted a five-day surveillance of the House, which, according to his police experience and after consulting with his superior and the local district attorney, gave him probable cause to request a search warrant for drugs and illegal firearms.

The Court quickly disposes of Plaintiffs' sole and unconvincing argument that "[i]t is impossible that the facts as declared under oath by Benitez could have taken place[,]" Docket # 67, p. 6, because Benitez "lied." Docket # 82, p. 7. As a threshold matter, Plaintiffs have come forward with no evidence that, even if he erred in concluding that illicit activity was taking place in the House, Benitez made false statements knowingly and intentionally, or with reckless disregard for the truth. See Franks, 438 U.S. at 171. As a matter of uncontested fact, neither

**Civil No. 10-1565 (SEC)**                                                                 Page 13

Benitez nor Plaintiffs knew each other, and they were never engaged in an embroilment (see SUF ¶¶ 26-27). Indeed, Plaintiffs have marshaled no evidence showing that Benitez had a motive to lie in order to secure the search warrant. Aponte-Matos, 135 F.3d at 188 (placing weight on whether the affiant had a motive to lie); Cruz-Acevedo v. Toledo-Davila, No. 07-2104, 2009 WL 497499, at *2 (D.P.R. Feb. 26, 2009). ("Without more facts [and] . . . the affiant's intent to lie, . . . we cannot deduce the existence of perjury vel non . . . .") (emphasis added); see also United States v. Hornick, 815 F.2d 1156, 1158 (7th Cir. 1987) ("[Plaintiffs] bear[] a substantial burden to demonstrate probable falsity."). Plaintiffs, moreover, have failed to "[o]ffer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." United States v. McNeese, 901 F.2d 585, 594 (7th Cir. 1990) (citation omitted).[7]

As previously indicated, nowhere in his sworn statement does Benitez refer to Plaintiffs. Nor does he ever say that he centered his surveillance on them. Benitez simply attested to witnessing drug and illegal weapon transactions in front of the House. Further, Plaintiffs neither requested a Franks hearing nor attempted an offer of proof relating to any material omission from the Benitez affidavit. See, e.g., United States v. Rumney, 867 F.2d 714, 720 (1st Cir. 1989) (finding that material omissions excluded from a warrant application are prohibited by the Fourth Amendment).[8]

---

[7] Without elaborating, Plaintiffs accuse Benitez of committing perjury. "Perjury consists of false testimony under oath concerning a matter material to the proceeding, as long as the testimony is given 'with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" United States v. Shinderman, 515 F.3d 5, 19 (1st Cir. 2008) (quoting United States v. Dunnigan, 507 U.S. 87, 94 (1993)). For the reasons stated above, Plaintiffs' conclusory perjury allegations fail to establish Benitez's willful intent to provide fallible testimony.

[8] Although it is unclear whether a § 1983 plaintiff can request a Franks hearing, compare Simmons v. Poe, 47 F.3d 1370, 1383 (4th Cir. 1995) with Sostre v. County of Suffolk, No. 09-1835, 364 Fed.Appx. 677, 2010 WL 445467, at *2 (2d. Cir. Feb. 5, 2010) (unpublished), the Court

**Civil No. 10-1565 (SEC)**                                                                                                   **Page 14**

Undeterred, Plaintiffs insist, in a wholly conclusory fashion, that Benitez "lied," contending that "the deliberation in the lying is 'implicit,' not being an honest mistake." Docket # 82, p. 7. But this is exactly the sort of conclusory attack that the Franks Court deemed insufficient to defeat the presumption of validity to which a warrant affidavit is entitled. Franks, 438 U.S. at 171("To overcome this presumption and support a conclusory statement . . . the [plaintiff] must do more than construct a self-serving statement which refutes the warrant affidavit."); cf. U.S. v. Brown, 669 F.3d 10, 16 n. 5 (1st Cir. 2012) (reiterating that issues adverted to in a cursory manner are deemed waived).

Be that as it may, Plaintiffs' convenient strategy of offering a series "alibis" for Reyes-Reyes does not carry the day. These after-the-fact statements (see notes 3 & 4, above) are simply insufficient to rebut such a strong presumption. See United States v. Rosario-Mirando, 537 F.Supp. 2d 299, 303 (D.P.R.) (finding that a party's self-serving statement is an insufficient offer of proof to satisfy the Franks standard) (citing United States v. McDonald, 723 F.2d 1288, 1294 (7th Cir. 1983)), reh'g denied, 561 F. Supp. 2d 157 (D.P.R. 2008); United States v. Ortiz, 575 F. Supp. 2d 373, 377 (D.P.R. 2008) (same). Tellingly, such "alibis" consist of Reyes-Reyes' own testimony. Reyes-Reyes "[d]id not provide affidavits from witnesses or otherwise reliable statements from them: he simply presented his own [testimony] . . . ." United States v. Stirn, 73 F.3d 371, Nos. 94-30288, 95-30016, 1995 WL 755289, at * 4 (9th Cir. Dec. 20, 1995) (unpublished table decision). Here, as in United States v. Radtke, a party's own sworn testimony to establish falsity of the warrant affidavit did not amount to a substantial preliminary showing of falsity under Franks. 799 F.2d 298, 310 (7th Cir. 1986); see also, e.g.,United States v. Igbo, Nos. 90-50406, 91-50027, LEXIS 12685, at *3-4 (9th Cir. May. 18, 1993) (unpublished) ("[A]ppellants rely solely on their own affidavits to justify their request for a Franks hearing .

---

need not decide this issue, as Plaintiffs also have failed to advance this argument.

**Civil No. 10-1565 (SEC)**                                                                 Page  15

. . [but] [m]ere self-serving statements do not satisfy the Franks requirement . . . ."), cert. denied, 513 U.S. 949 (1994).

In short, Reyes-Reyes' own statements, without more, fail to shoulder the burden of proving that a genuine issue exists as to whether Benitez knowingly and intentionally provided false information to secure the warrant or gave false information with reckless disregard for the truth. See Freeman v. County of Bexar, 210 F.3d 550, 553 (5th Cir. 2000) (citing Franks, 438 U.S. at 171); see also Jones v. Seaford, 661 F. Supp. 864, 872 (D. Del. 1987) ([T]o the extent Franks challenges can be disposed of on the basis of materiality, they would appear to be consistent with a court's function on a Rule 56 motion.") (citation omitted); Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (holding that the "[t]he evidence manifesting the dispute must be 'substantial'" (citation omitted)), cert. denied, 425 U.S. 904 (1976). Because Plaintiffs have come nowhere close to overcoming their onerous burden that Benitez "[a]cted in reckless disregard, with a high degree of awareness of [the] probable falsity of statements made in support of [the] . . . warrant [in question], Forest v. Pawtucket Police Dep't, 377 F.3d 52, 58 (1st Cir. 2004) (citation and internal quotation marks omitted), cert. denied, 543 U.S. 1149 (2005), the Court need not proceed to the second aspect of the Franks standard. Under these circumstances, no reasonable defendant would have understood that his conduct violated Plaintiffs' Fourth Amendment rights; therefore, Benitez is entitled to qualified immunity for his actions in securing the search warrant for the House.

The same analysis holds true with regard to the Tacoma. As said, there is evidence that Benitez received a tip that the Tacoma was being used in the trafficking of fire arms and sale of controlled substances. Docket # 71-1, p. 1. During his surveillance, Benitez witnessed the Individual as he pulled out a firearm from the Tacoma. According to Reyes-Reyes' convenient testimony (and sole contention), however, at that time the Tacoma was with him "at all moments" (see note 3, above). But, as explained above, Reyes-Reyes' own self-serving and

**Civil No. 10-1565 (SEC)** Page 16

uncorroborated testimony is insufficient to defeat the presumption of validity to which the warrant affidavit is entitled. See United States v. Moore, 129 F.3d 989, 992 (8th Cir. 1997) ("Moore submitted his own affidavit stating . . . that no vehicle owned by him had ever been in that vicinity. This affidavit, without more, does not provide the 'substantial preliminary showing' that the supporting affidavit contained any deliberate false statements or intentional or reckless misrepresentations . . . ."). Because it cannot be gainsaid that an objectively reasonable public official would have understood that his conduct offended Plaintiffs' Fourth Amendment rights, Benitez likewise deserves protection under the qualified immunity doctrine for his role in securing the Tacoma search warrant.

In all events, even accepting Reyes-Reyes' self-serving and uncorroborated "alibis," deeming them sufficient to create a genuine material dispute, and assuming, arguendo (see Solis-Alarcón, 662 F.3d at 58) that they surmounted their burden under the first Franks prong, Plaintiffs nevertheless neglected to discuss the second prong of the Franks standard, i.e., whether such "false" statements "were necessary for a finding of probable cause." Aponte-Matos, 135 F.3d at 187 (citations and internal quotation marks omitted). Indeed, Plaintiffs direct this court to no facts showing that the "[f]alsehoods were material to the issuance of the warrant; that is to say, the magistrate must have relied on the alleged falsehood and there must be no other basis for a finding of probable cause." Cruz-Acevedo, 2009 WL 497499, at *2 (citations omitted).[9] Such a lackluster effort suffices to discount Plaintiffs' ill-

---

[9] Given the informant's accurate description regarding the Tacoma and the House, coupled with the illicit activity Benitez genuinely thought to have seen, a reasonable officer could have reasonably inferred that the Tacoma and the House were being used in furtherance of such criminal activity. See U.S. v. Kearney, 672 F.3d 81, 89 (1st Cir. 2012) ("Probable cause to issue a search warrant exists when given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.") (citations and internal quotations marks omitted; omissions in original); cf. Herring v. U.S., 555 U.S. 135, 145 (2009) ("[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would

**Civil No. 10-1565 (SEC)** Page 17

developed contentions, as it is common ground that "issues adverted to in a perfunctory manner, unaccompanied by some effort at development argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990).[10]

*Supplemental State Claims*

Finally, defendants argue that this court should refrain from entertaining Plaintiffs' state law claims. In what has become a pattern of omissions, Plaintiffs also failed to oppose this contention. Recently, in Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011), the First Circuit recapitulated the well settled rule that "[i]f the federal claims are dismissed before trial, . . . . the state claims should be dismissed as well." Id. (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726, (1966)). It reminded, however, that such general principle is no "mandatory rule to be applied inflexibly in all cases[,]" id. (citation omitted), punctuating that "[d]istrict court[s] must exercise 'informed discretion' when deciding whether to exercise supplemental jurisdiction over state law claims." Id. (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996)). Such determination implicates a weighing of several factors: to wit, comity, judicial economy, convenience, and fairness. Id. (citations omitted).

Having evaluated these elements, the Court declines to exercise supplemental jurisdiction in this case. The parties have concentrated their efforts here mostly on the federal claims; the

---

have known that the search was illegal in light of all of the circumstances." (quoting United States v. Leon, 468 U.S. 897, 922 n. 23 (1984))) (internal quotation marks omitted).

[10] "[I]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace. King v. Town of Hanover, 116 F.3d 965, 970 (1st Cir.1997) (citations and internal quotations marks omitted). Plaintiffs' opposition and sur-reply epitomize such a skeletal discussion, wholly devoid of legal analysis.

**Civil No. 10-1565 (SEC)** Page 18

Puerto Rico law issues have received no consideration. Comity, meanwhile, will be served by permitting the Commonwealth courts to resolve such issues of local concern.

**Conclusion**

There is no doubt that the search of Plaintiffs' dwelling and vehicle yielded no illicit weapons or controlled substances. But it is no less true that, in the performance of his discretionary functions, Benitez made a reasonable, albeit mistaken judgment. While the Court sympathizes with Plaintiffs' unfortunate experience, the point of qualified immunity is precisely to permit officials to take action (such as the one taken by Benitez) with autonomy and without fear of repercussion. Because "[t]his [is] a case of understandable mistaken identity, not . . . of intentional misstatement . . . ," United States v. Cruz, 594 F.2d 268, 272-273 (1st Cir. 1979), the interest of combating society's evils, tips the scale in favor of providing Benitez with such a protection.[11]

For the reasons stated, co-defendants motion for summary judgment is **GRANTED**. Plaintiffs' federal claims are therefore **DISMISSED with prejudice**; their state law claims are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of May, 2012.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge

---

[11] After all, Reyes-Reyes testified he believed that the police was looking for someone else. SUF ¶ 25.